Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Appellant,

v.

SOUTHERN FARMS, INC., Appellee.

No. 19193.

United States Court of Appeals
Fifth Circuit.

March 30, 1962.

Rehearing Denied April 27, 1962.

Jacob I. Karro, Deputy Asst. Sol., Charles Donahue, Sol., Morton Liftin, Asst. Sol., Caruthers G. Berger, Attys., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellant.

Hardy Lott, Lott & Sanders, Greenwood, Miss., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The Secretary of Labor sued to enjoin Southern Farms, Inc., from violating the provisions of the Fair Labor Stand-

ards Act as amended.[1] Southern Farms, Inc., is engaged in purchasing, candling and selling eggs at Itta Bena, Mississippi. It regularly ships eggs in interstate commerce, but contends that the wage benefits of the Act do not apply to its employees because they are engaged in handling agricultural commodities for market, and are so "employed within the area of production (as defined by the Secretary)."[2]

The district court found that the evidence sustained that contention, and hence that Southern Farms, Inc., had not been in violation of the Act. The district court expressed the further opinion "that even should the business conducted by said defendant come within the provisions of the Act, an injunction should not issue."

■ The primary question is whether Southern Farms' employees are "employed in the area of production" as that term has been defined by the Secretary.[3] To be so employed an employee who handles eggs must be employed in an establishment in which 95% of the eggs come either from farms within a 50-mile area, or from "farm assemblers or other establishments through which the commodity customarily moves."

It was stipulated that more than 5% of the eggs handled at Southern Farms' plant in Itta Bena come from flocks of hens on farms more than 50 airmiles from Itta Bena. The parties agree on their

---

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by the Fair Labor Standards Amendments of 1949, c. 736, 63 Stat. 910, 29 U.S.C.A. § 201 et seq.

2. The pertinent provision of the Fair Labor Standards Act, Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended, 29 U.S.C.A. § 201 et seq., is as follows: "Sec. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to * * * (10) any individual employed within the area of production (as defined by the Secretary), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products; * * *."

3. The pertinent part of 29 Fed.Code Reg. 536.2, 29 U.S.C.A.Appendix reads as follows: "Sec. 536.2 'Area of production' as used in section 13(a) (10) of the Fair Labor Standards Act. "(a) An individual shall be regarded as employed in the 'area of production' within the meaning of section 13(a) (10) of the Fair Labor Standards Act in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products: "(1) If the establishment where he is employed is located in the open country or in a rural community and 95 percent of the commodities on which such operations are performed by the establishment come from normal rural sources of supply located not more than the following airline distances from the establishment: "(i) With respect to the ginning of cotton—10 miles; "(ii) With respect to operations on fresh fruits and vegetables—15 miles; "(iii) With respect to the storing of cotton and any operations on commodities not otherwise specified in this subsection—20 miles; "(iv) With respect to the compressing and compress-warehousing of cotton, and operations on tobacco, * * * grain, soybeans, poultry or eggs—50 miles. * * * "(b) For the purposes of this section: "(1) 'Open country or rural community' shall not include any city, town or urban place of 2,500 or greater population or any area within: "(i) One air line mile of any city, town, or urban place with a population of 2,500 up to but not including 50,000. * * * "(2) The commodities shall be considered to come from 'normal rural sources of supply' within the specified distances from the establishment if they are received (i) from farms within such specified distances, or (ii) from farm assemblers or other establishments through which the commodity customarily moves, which are within such specified distances and located in the open country or in a rural community, or (iii) from farm assemblers or other establishments not located in the open country or in a rural community provided it can be demonstrated that the commodities were produced on farms within such specified distances."

statement of the issue. "The issue therefore is whether the eggs from out-of-area farms, in excess of the 5% tolerance, come to the defendant through 'farm assemblers or other establishments through which the commodity customarily moves', which are themselves located within the 50-mile limit."

The out-of-area eggs are supplied to Southern Farms by Greenwood Egg Company and two other suppliers. Between September 1959 and July 1960 the eggs supplied by Greenwood alone accounted for more than 20% of the eggs handled by Southern Farms. Greenwood collects in its truck eggs from a number of its different farms, buys eggs produced on other farms, and hauls them to Itta Bena. Greenwood is a partnership, and its two partners are also stockholders in Southern Farms. One of the Greenwood partners testified that, "the only assembly facilities Greenwood Egg Company has as such would be in conjunction with Southern Farms facilities."

Since Greenwood's truck collects eggs beyond the 50-mile area, the truck cannot qualify as a "farm assembler" or an "establishment through which" the eggs move within the specified distance. The Greenwood partner who testified readily admitted that Greenwood does not maintain a plant where it assembles eggs and that its truck driver brings the eggs not to Greenwood Egg Company but to Southern Farms at Itta Bena. That being true, it is not material that he further testified, "We have full-time employees there at the office (of Southern Farms), paid by Greenwood Egg Company." Very clearly, we think, the evidence failed to establish that Greenwood was a "farm assembler" or "other establishment" through which the eggs customarily move within the specified distance. We hold that the district court erred in concluding that Southern Farms was exempt from the wage provisions of the Act under Section 13(a) (10).

■ The Secretary questions the findings of fact from which the district court concluded that, in any event, an injunction should not issue.[4] Those findings are not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A. Under such findings, while the judgment must be reversed, the district court, in its discretion, may decline to issue an injunction.[5] The judgment is therefore reversed and the cause remanded.

Reversed and remanded.

4. "When the investigation of July 1960 showed that the flocks from which the eggs came,—a sufficient number of them —were located more than fifty miles away from the plant at Itta Bena, so that by that method of calculation, more than five percent of the eggs handled by the defendants were, in fact, produced more than fifty airline miles away from the plant, and when that was developed, the Secretary of Labor then, for the first time, contended that the defendant was required to comply with the Fair Labor Standards Act.

"Promptly after this contention was made, the defendant attempted to comply fully with the provisions of the Act and did so beginning on the 24th of August, 1960, except for two clerical employees; and full compliance for all employees was attained on September 28, 1960. This is so, although the defendant, in good faith, believed then and still continues to believe that it is not legally required to comply with the Act.

"I find as a fact that there was at no time during either of the investigations any effort on the part of defendant to conceal, and there was in fact no concealment.

"I find as a fact that it is probable that the defendant will continue in the future to comply fully with the provisions of the Fair Labor Standards Act.

"With these fact findings, even if I concluded that coverage applied and no exemption was available to the defendant, I necessarily would have to find that this situation did not require the issuance of an injunction and, in fact, would not permit the issuance of an injunction."

5. Compare Mitchell v. Pidcock, m/s, 5 Cir., No. 18687, 299 F.2d 281, decided Feb. 5, 1962; Mitchell v. Ballenger Paving Co., m/s, 5 Cir., No. 18714, 299 F.2d 297, decided Feb. 6, 1962.